Syllabus.

# 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉.

## City of Richmond v. Drewry-Hughes Company.

November 23, 1916.

Absent, Prentis, J.

Reheard January 17, 1918.

1. Taxation—*City of Richmond's Powers—Limitation.*—While the city of Richmond under its charter has plenary powers of taxation, its power to tax any particular property is subject to any limitation that may be placed thereon by the legislature.

2. Taxation—*Merchant's Tax—Powers of City to Tax—Acts 1915, page 119.*—The capital of merchants is intangible personal property, and under Acts 1915, page 119, it cannot be taxed by a city at a higher rate than thirty cents upon the one hundred dollars of assessed valuation thereof. The State imposes a license tax on merchants regulated by the amount of their purchases. The language of the act "that the capital of merchants shall not be subject to State taxation, but may be taxed locally as prescribed by law," means that such capital shall not be subject to State taxation on the *ad valorem* basis so long as the State continues to tax merchants with a license, and that as to local taxes they must be in accordance with the general law of the State, and had reference to the preceding provision of the same section placing a maximum of thirty cents thereon.

3. Taxation—*Authority to be Plain.*—A tax must be plainly authorized before the citizen can be charged therewith.

## ON REHEARING.

4. Taxation—*Merchants' Tax—Powers of City to Tax—Acts 1915, page 119.*—The capital of merchants is "intangible personal property" within the meaning of the tax laws. By the express terms of the segregation act (Acts 1915, page 119), such capital is excepted from taxation by the State in the ordinary sense (that is, upon an *ad valorem* basis), and, therefore, is not within the class of intangible property segregated for

State taxation, but is subject to be taxed locally "as prescribed by law." The phrase "as prescribed by law" does not mean the prescribed rate of thirty cents mentioned in the segregation act, but means that the local taxation of merchants' capital is to be controlled by other statutory provisions outside of the terms of that act; and statutory provisions outside of the segregation act, contemplating and authorizing a tax on merchants' capital at such rate as the county and city authorities deem necessary and proper, and thus responding to the expression "as prescribed by law," are found in section 69 of the charter of the city of Richmond (under which tax here in question was levied) and in sections 833-a and 1043 of the Code and section 46 of the tax bill.

5. TAXATION—*Merchants' Tax—Powers of City to Tax—Acts 1915, page 119.*—The language of the act in regard to merchants' capital is, "Except that the capital of merchants shall not be subject to State taxation but may be taxed locally as prescribed by law." The words "as prescribed by law" were not apt and natural words to convey the idea that local taxation on merchants' capital was to be limited to the rate fixed by the act. If the purpose of the draftsman had been to restrict local taxation of the capital of merchants to the rate previously named in that particular act, undoubtedly he would have used the words "as prescribed by this act," or their equivalent, instead of "as prescribed by law." The purpose of the General Assembly seems to have been to leave merchants' capital to be taxed by localities practically as it had been prior to the passage of the segregation act, and this becomes the more apparent upon a consideration of the terms of that act in connection with the other kindred provisions of the tax laws enacted at the same time.

6. STATUTES—*Construction—In Pari Materia—Acts Passed at same Session of Legislature.*—The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; it is to be presumed that such acts are imbued with the same spirit and actuated by the same policy and they are to be construed together as if parts of the same act. They should be construed, if possible, so as to harmonize, and force and effect should be given to the provisions of each.

7. TAXATION—*Merchants—Policy of the State.*—It has been the policy of our law for years to impose a license tax on merchants as the exclusive method of State taxation, and to permit a property or *ad valorem* tax thereon by localities. It is not surprising, therefore, to find that the General Assembly, in

launching a new but tentative and partial segregation plan of taxation, should have refrained from disturbing the status of the tax laws as to this particular property. A judicial construction in keeping with this natural and probable legislative purpose avoids conflict, and harmonizes all the provisions of the law enacted on the subject at the extra session of 1915, and its effect is to take from the general class of intangible personal property segregated to the State, the capital of merchants and to place it, as heretofore, in a class to itself.

8. TAXATION—*Merchant's Tax—Schedule C of the Tax Bill.*—The capital of merchants was not intended to be embraced in schedule C of the tax bill. While such capital might, upon a casual reading, appear to be included in that classification, yet when sections 8 and 9 of the schedule are read in connection with other provisions of the tax laws, particularly the segregation act itself and section 46 of the tax bill, it is clear that the capital of merchants was not intended to be embraced within this classification, but that the same is expressly excepted and excluded therefrom.

9. STATUTES—*Practical Construction—Period of Practical Construction.*—The rule of interpretation which permits the courts to look to the practical construction adopted by executive officers is usually applied to cases in which such construction has continued and been acquiesced in for a long period of time; but it is not to be confined to such cases. One reason for the rule is that the officers charged with the duty of carrying new laws into effect are presumed to have familiarized themselves with all the considerations pertinent to the meaning and purpose of the new law, and to have formed an independent, conscientious and competent expert opinion thereon.

10. TAXATION—*Construction of Statute—Authority to be Plain.*—It is undoubtedly true as a general proposition, that taxes must be plainly authorized before they can be collected; but this rule does not go to the extent of cutting off and shutting out all the lights that may be reasonably brought to bear in determining the intention of the law-making power.

11. TAXATION—*Construction of Statutes—Repeal of Statutes.*—The question of the right of the city of Richmond to impose upon the capital of merchants an *ad valorem* tax in excess of thirty cents on the one hundred dollars of assessed valuation is not one of an original grant of power to tax, to which the rule of *strictissimi juris* applies. It is unquestioned that the power to levy the tax complained of in the instant case was expressly given by statute and had been exercised for many years. The real question is whether the former law has been repealed by

implication by the segregation act, for it certainly has not been repealed thereby in express terms. Repeals by implication are not favored. But there is always a presumption more or less strong, according to circumstances, that a statute is not intended to repeal a prior statute on the same subject, unless it does so in express terms. In the case of grants of power to tax—or indeed for other purposes—to municipal bodies, the presumption that it was not intended to modify or repeal them by subsequent general legislation is so strong as to be almost conclusive.

12. TAXATION — *Constitutional Law — Uniformity.*—As merchants' capital is not embraced in the classification of schedule C of the tax bill, but remains where it has practically always been, in a class to itself, subject to a license tax only by the State but liable to a local property tax, and the propriety and legality of such a classification has been too long recognized in this State to admit of serious question, and is, moreover, plainly authorized by section 169 of the Constitution of 1902, therefore, there is no force in the contention that if this construction is correct, the segregation act itself is unconstitutional because it violates section 168 of the Constitution of 1902, requiring uniformity in taxation.

13. TAXATION—*Uniformity—Intangible Property.*—There can be no question about the power to tax different classes of intangible property at different rates. A contrary holding would strike a fatal blow to the entire plan of taxation as established by the General Assembly in 1915 (see section 9 of the tax bill); and would, furthermore, be contrary to the settled law on the subject.

Error to a judgment of the Hustings Court of the city of Richmond. Judgment for petitioners. Defendant assigns error.

*Reversed.*

The opinion states the case.

*H. R. Pollard, A. H. Light* and *E. P. Buford,* for the plaintiff in error.

*Geo. Bryan, Hill Montague* and *E. Warren Wall,* for the defendant in error.

*Hunsdon Cary* and *Henry C. Riely,* for others interested not parties to the proceeding.

Harrison, P., delivered the opinion of the court.

This proceeding involves the right of the city of Richmond to assess the capital of merchants with an *ad valorem* tax in excess of thirty cents on the one hundred dollars.

By an ordinance approved April 9, 1915, the city assessed the capital employed by the defendant in error in its business as a merchant at the rate of $1.40 on the hundred dollars, and now appeals from the decision of the lower court holding that its power to levy such a tax was limited to thirty cents on the one hundred dollars. It is true that the city of Richmond, under its charter, has plenary powers of taxation, but its power to tax any particular property is subject to any limitation that may be placed thereon by the legislature.

By an act approved March 15, 1915, the General Assembly of Virginia installed a new system of taxation, under which the several kinds and classes of property were segregated, specifying and determining upon what subjects local taxes might be levied. Acts, extra session, 1915, page 119. By this act all taxable real estate and all taxable tangible personal property is set apart and made subject to local taxation only. It is then declared that "all insurance taxes and licenses on insurance companies and all taxable intangible personal property, rolling stock of all corporations operating railroads by steam, and all other classes of property not hereinbefore specifically enumerated in this act shall be and the same are hereby segregated and made subject to State taxation only; provided that nothing herein contained shall prevent any city from levying a tax upon said segregated intangible personal property assessed to the residents therein at a rate not to exceed thirty cents upon the one hundred dollars of assessed valuation thereof."

The foregoing language is clear and comprehensive and standing alone, leaves it free from doubt that the legislature limited localities to thirty cents on the one hundred dollars as the maximum rate of taxation that they could impose upon taxable intangible personal property.

It is admitted, as it must be, that the capital of merchants belongs to the class known as intangible personal property. The city of Richmond in maintenance of its right to levy the tax here called in question, insists that the capital of merchants has not been segregated, but has been excepted from the operation of the act; resting that contention upon the following language of the same paragraph containing the prescribed limitation of thirty cents, namely: "except that the capital of merchants shall not be subject to State taxation, but may be taxed locally as prescribed by law." This contention cannot be sustained. The State taxes the capital of merchants on the basis of their purchases, calling it a license, and the purpose of the language relied on was clearly to exclude the idea that the State intended to tax the capital of merchants with both a license and an *ad valorem* tax. The act had already, by clear and specific language, segregated and set apart all taxable intangible personal property as one of the subjects that the State alone could tax, providing that localities might levy a tax thereon not exceeding thirty cents on the one hundred dollars, and it is not to be supposed that in the next breath the legislature intended to emasculate what it had just done by excepting from the operation of the act one of the largest classes of intangible personal property, thereby rendering its action meaningless.

Apart from the manifest desire and purpose of the legislature, as shown throughout this legislation, to adopt a more equitable system of taxation than had theretofore existed, it is clear that one of its chief purposes was to reduce the rate of taxation upon intangible personal property in order

thereby to induce a more general return of such property, and to bring about uniformity in the rate of tax thereon by establishing a fixed rate applicable alike to all localities. The uniformity, consistency and reasonableness sought to be attained would be wholly defeated if the contention of the plaintiff in error were tenable. The whole legislation on this subject makes it, we think, clear that under the act of March 15, 1915, the city of Richmond was limited in its power to tax the capital of merchants to thirty cents on the one hundred dollars. The language of the so-called exception, "that the capital of merchants shall not be subject to State taxation, but may be taxed locally as prescribed by law," meant that such capital should not be subject to State taxation on the *ad valorem* basis, so long as the State continued to tax merchants with a license. The language, "but may be taxed locally as prescribed by law," meant that the local tax must be in accordance with the general law of the State, and had reference to the preceding provisions of the same section placing a maximum tax of thirty cents, by localities, upon intangible personal property.

If, however, this interpretation of the act of March 15, 1915, were doubtful, the result would be the same in this case, it being well settled that a tax must be plainly authorized before the citizen can be charged therewith.

The judgment complained of must be affirmed.

REHEARD JANUARY 17, 1918.

KELLY, J., delivered the opinion of the court.

This proceeding, which involves the right of the city of Richmond to impose upon the capital of merchants an *ad valorem* tax in excess of thirty cents on the one hundred dollars of assessed valuation, is before us on a rehearing. At the former hearing we were urged to render a speedy decision, and, notwithstanding an unusual pressure of work

at that time, a conclusion was reached during the term at which the case was submitted, and an opinion was handed down on the 23rd day of November, 1916, affirming the judgment of the lower court and holding against the validity of the tax in question.

Within the time prescribed by law, the city of Richmond filed a petition for rehearing, to which were added supplemental petitions from the boards of supervisors of various counties and from the State Tax Board of Virginia, these latter petitioners asking permission to come into the case on the ground of the serious and far-reaching effect of the decision on local taxation throughout the State.

It is proper to say that while two members of this court, as at present constituted, did not participate in the former decision, this rehearing was granted by the judges who heard and decided the case upon the first argument, including the learned and honored author of the former opinion, since retired.

When the cause came on to be reheard, it was very elaborately argued by the same able and distinguished counsel who appeared originally therein, and by others no less able and distinguished who subsequently came into it; and upon a further consideration we are of opinion that our former decision was erroneous. The writer of this opinion participated and concurred in that decision, and assumes his full share of responsibility for the mistake which he now believes was made.

At the extra session of 1915, the General Assembly passed what is known as the State tax segregation act, which, so far as it need be set out in this immediate connection, provides as follows:

"* * * all taxable intangible personal property, rolling stock of corporations operating railroads by steam, and all other classes of property not hereinbefore specifically enumerated in this act, be, and the same are hereby, segre-

gated and made subject to State taxation only; provided that nothing herein contained shall prevent any city from levying a tax upon said segregated intangible personal property assessed to the residents therein at a rate not to exceed thirty cents upon the one hundred dollars of assessed valuation thereof; * * * except that the capital of merchants shall not be subject to State taxation but may be taxed locally as prescribed by law; and the shares of stock of banks * * * which shares of stock shall be taxed as provided by law." (Acts 1915, page 119, section 1.)

It is conceded that the capital of merchants is "intangible personal property" within the meaning of the tax laws. By the express terms of the act quoted above, such capital is excepted from taxation by the State in the ordinary sense (that is, upon an *ad valorem* basis), and is, therefore, not within the class of intangible property segregated for State taxation, but is subject to be taxed locally "as prescribed by law." The ultimate and decisive question, therefore, is: What is meant by the phrase, "as prescribed by law"? Does it mean the prescribed rate of thirty cents mentioned in the segregation act, or does it mean that the local taxation of merchants' capital is to be controlled by other statutory provisions outside of the terms of that act? We feel constrained to recede from the opinion formerly expressed on this question and to adopt the latter view.

The words "as prescribed by law" were not apt and natural words to convey the idea that local taxation on merchants' capital was to be limited to the rate fixed in the act. This language, in its inception, was a part of a proposed new law, and in its ordinary, natural and usual sense would be understood to refer to something outside of the proposed law, either already a part of the existing statute law or thereafter to be enacted into a law by competent authority. If the purpose of the draftsman had been to restrict local taxation of the capital of merchants to the rate

previously named in that particular act, undoubtedly he would have used the words "as prescribed by this act," or their equivalent, instead of "as prescribed by law."

If this be not true, then it would follow that "shares of stock of banks" could only be taxed locally at the thirty-cent rate, for, as we think, it cannot be plausibly contended that the words "as prescribed by law," when applied in the act to merchants' capital, have any other or different meaning than the words "as provided by law" when applied therein to bank stock. The necessary result of the decision of this court in *Tresnon* v. *Board of Supervisors*, 120 Va. 203, 90 S. E. 615, is that the local taxation of bank stock is not controlled by the terms of the segregation act.

Statutory provisions outside of the segregation act, contemplating and authorizing a tax on merchants' capital at such rate as the county and city authorities deem necessary and proper, and thus responding to the expression "as prescribed by law," are found in section 69 of the charter of the city of Richmond (under which the tax here in question was levied) and in sections 833-a and 1043 of the Code and section 46 of the tax bill.

The purpose of the General Assembly seems to have been to leave merchants' capital to be taxed by localities practically as it had been prior to the passage of the segregation act, and this becomes the more apparent upon a consideration of the terms of that act in connection with the other kindred provisions of the tax laws enacted at the same time. For example: The segregation act provides "that nothing herein contained shall prevent any city from levying a tax upon said segregated intangible personal property assessed to the residents therein at a rate not to exceed thirty cents upon the one hundred dollars of assessed valuation thereof; nor to prevent the board of supervisors of any county from levying a district road tax on all said segregated intangible personal property assessed to the residents in the magis-

terial district proposed to be taxed for district purposes to be used exclusively for the construction and repair of roads located within the magisterial district in which said levy is laid at a rate not to exceed thirty cents on the one hundred dollars of assessed valuation." This provision, in practically the same language, was carried into section 9 of the act known as the tax bill (Acts 1915, page 162). It clearly appears, therefore, that counties, in taxing the intangible personal property segregated for State taxes, are limited not only as to rate but also as to the purpose for which the levy is laid, namely, district road purposes. Now, when we come to look to section 46 of the tax bill, which expressly provides for a State license tax upon the business of merchants, we find a provision which is wholly inconsistent with the one last quoted from the segregation act, if the latter act be construed to limit the local rate of taxation on merchants' capital to thirty cents on the one hundred dollars. This provision in section 46, so far as it need be quoted here, is as follows: "The sums imposed under and by virtue of this section shall be in lieu of all taxes for State purposes on the capital actually employed by merchants, or mercantile firms or corporations in said business, except the registration fee and franchise tax, and *except that such merchants shall not be exempt from the payment of county, district and road levies on the net amount of capital on hand on the first day of February of each year, and may be required to pay the usual city, county, district and road or other levies thereon, notwithstanding this act.*" (Italics added.) If, therefore, as contended on behalf of the defendant in error, the capital of merchants was embraced in the intangibles segregated for State taxation, then the counties, while limited under the segregation act to taxation thereof for district road purposes only, would be plainly given the further and contradictory right, under section 46

of the tax bill, to levy taxes on such capital for *the usual county, district* and *other purposes,* as well as district road purposes. The clash is obvious and inevitable.

Scarcely less troublesome is the question which would arise between the segregation act, as construed by the defendant in error and section 833-a of the Code as amended and re-enacted by the act of March 17, 1915. This section authorizes the boards of supervisors *to fix the amount of the county levies for the current year, and to levy on all property assessed with tax within the county, and on the capital invested, used or employed in mercantile business. Un-*doubtedly the legislature must have known, from the history of this section, that the specific provision therein with reference to capital in the mercantile business was expressly intended to place such capital upon precisely the same basis as all the other property upon which the counties had the right to impose a property tax for the usual county purposes; and the retention of this provision in the section as re-enacted in 1915 can hardly be satisfactorily explained upon any other theory than that the legislature intended to make no change in regard to this class of property.

The several acts to which we have adverted, namely, the segregation act, the amendment and re-enactment of sections 9 and 46 of the tax bill, and of sections 833-a of the Code, all single out and make specific reference to the capital of merchants, and they were all considered and passed at the same session and practically at the same time. That the terms of the last three, taken as a whole, are hopelessly in conflict with those of the first-named act, is perfectly manifest if we are to hold that the latter restricts such capital to the thirty-cent rate. It is idle to argue that this conflict can be reconciled by construing sections 9 and 46 of the tax bill and section 833-a of the Code to mean that the county authorities may do the things therein contemplated subject to the limitation as to purpose and rate fixed

in the segregation act. The counties cannot require merchants to pay on their capital *the usual county, district and road or other levies,* if they are restricted to a *rate of thirty cents* and to the use *thereof for district road purposes.*

How, then, should we deal with the conflict with which we would thus be confronted? Plainly it is our duty, under settled and familiar rules of construction, to harmonize these several cognate acts of the legislature if this can be done without violence to their several express terms.

"The rule that statutes *in pari materia* should be construed together applies with peculiar force to statutes passed at the same session of the legislature; it is to be presumed that such acts are imbued with the same spirit and actuated by the same policy and they are to be construed together as if parts of the same act. They should be construed, if possible, so as to harmonize, and force and effect should be given to the provisions of each." 36 Cyc. 1151.

There is no difficulty in applying this rule of construction to the present controversy. It has been the policy of our law for years to impose a license tax on merchants as the exclusive method of State taxation, and to permit a property or *ad valorem* tax thereon by localities. The decision by this court, in 1899, of the case of *Supervisors* v. *Tallant,* 96 Va. 723, 32 S. E. 479, and the consequent amendment of section 883, clause 2, of the Code (March 2, 1900, Acts 1890-1900, page 731), are familiar landmarks in the tax laws of the State, the former pointing out the legislative action necessary to placing a local *ad valorem* tax on merchants' capital, and the latter manifesting the will and purpose of the legislature to authorize the tax. Never since the act of March 2, 1900, has there been any indication of a change of this will and purpose, but upon the contrary every subsequent act of the legislature which has dealt specifically with the subject has plainly shown an intention to preserve intact this feature of the tax laws. In view of

this history, and of the well-known difficulties inherent in the subject, it is not surprising to find that the General Assembly, in launching a new but tentative and partial segregation plan of taxation, should have refrained from disturbing the status of the tax laws as to this particular class of property. A judicial construction in keeping with this natural and probable legislative purpose will avoid the conflict above pointed out, and will harmonize all the provisions of the law enacted on the subject at the extra session of 1915. The effect will be to take from the general class of intangible personal property segregated to the State, the capital of merchants and place it, as heretofore, in a class to itself.

It is earnestly insisted on behalf of the defendants in error that their capital is embraced in the classification of "intangible personal property" and in the classification and provisions of schedule C of the tax bill, and that this fact is conclusive in their favor. We are of opinion, however, that while such capital may, upon a casual reading, appear to be included in that classification, yet when sections 8 and 9 of the schedule are read in connection with other provisions of the tax laws, particularly the segregation act itself and section 46 of the tax bill, it is clear that the capital of merchants was not intended to be embraced within this classification, but that the same is expressly excepted and excluded therefrom. Section 9, as amended (Acts 1915 [extra session], chapter 117), provides that taxes on intangible personal property shall be as follows: "On all property embraced in classes 1, 2, 3, 4, 5 and 7 of this schedule, there shall be a tax of sixty-five cents on every one hundred dollars of the assessed value thereof, which shall be paid into the State treasury and applied to the payment of the expenses of the government. And any city in this State may levy a tax on such property assessed to residents therein at a rate not to exceed thirty cents on the one hun-

dred dollars of assessed valuation thereof; and the board of supervisors may levy a district road tax on such property," etc. We think that the language, *"such property assessed to residents therein,"* used in the act to designate the property as to which cities and counties are restricted to the thirty-cent rate, *means property assessed for State taxation.* There is not, as we understand, any contention that merchants' capital, by virtue of the terms of schedule C, may be taxed by the State upon an *ad volorem* basis. This result is absolutely precluded by the terms of the segregation act and of section 46 of the tax bill. And yet, if we were to hold that the capital of merchants is in terms included in the classification of the schedule, and is, therefore, subject to the restricted local rate, it would inevitably follow that such capital is likewise subject to the rate therein specified of sixty-five cents for State purposes, because there is nothing in the language of sections 8 and 9 of the tax bill to warrant an argument that such capital was intended to be embraced in the classification for the purpose of local taxation and not for the purpose of State taxation.

The conclusion that merchants' capital was not intended to be embraced in schedule C is fortified by the further consideration that such capital, notwithstanding the use of practically the same language which is now claimed to include it, has never been treated as embraced therein since the tax bill was first framed by the act of April 16, 1903 (Acts 1902-3-4, pages 155, 158). If this class of property is included in the expression "all personal property embraced in this schedule," under the act as amended March 17, 1915 (Acts 1915, page 160), it has been so included ever since the passage of the original act, and, therefore, always, formerly and now, it has remained, under the terms of section 9, subject to a property tax by the State. It has not been so construed, but upon the contrary, ever since the passage of the tax bill, the State has continued its long pre-

viously established practice and policy of taxing merchants by a license tax, based not on capital but on purchases, thus carrying into practical effect the very construction which we think necessarily results from a synthetic view of the terms of the several statutes enacted upon the subject by the General Assembly in 1915 and now under consideration.

We think the foregoing conclusions necessarily flow from an independent view of the statutes germane to the inquiry, but if it be conceded that the question is a doubtful one, then we should give due weight to the interpretation placed upon these statutes by that branch of the executive department of the State which is specially charged with the duty of construing and effectuating their provisions. It appears that the construction we have adopted is in accord with that which has been acted upon by the State Tax Board, composed of the Governor, the Auditor of Public Accounts and the Chairman of the State Corporation Commission. Under advice from that board, more than three-fourths of the counties of the State have applied a similar construction. It is true that the rule of interpretation which permits the courts to look to the practical construction adopted by executive officers is usually applied to cases in which such construction has continued and been acquiesced in for a long period of time; but it is not to be confined to such cases. One reason for the rule is that the officers charged with the duty of carrying new laws into effect are presumed to have familiarized themselves with all the considerations pertinent to the meaning and purpose of the new law, and to have formed an independent, conscientious and competent expert opinion thereon. The segregation plan was adopted in pursuance of a special provision in our State Constitution, and the following quotation from Judge Cooley is in point:

"Great deference has been paid in all cases to the action of the executive department, where its officers have been

called upon, under the responsibilities of their official oaths, to inaugurate a new system, and where it is to be presumed they have carefully and conscientiously weighed all considerations, and endeavored to keep within the letter and spirit of the Constitution. If the question involved is really one of doubt, the force of their judgment, especially in view of the injurious consequences that may result from disregarding it, is fairly entitled to turn the scale in the judicial mind." Cooley's Constitutional Limitations (7th ed.), page 104.

It is contended, and it is undoubtedly true as a general proposition, that taxes must be plainly authorized before they can be collected; but this rule does not go to the extent of cutting off and shutting out all the lights that may be reasonably brought to bear in determining the intention of the law-making power. Cooley on Taxation, page 454.

Moreover, it is to be remembered that the question before us is not one of an original grant of power to tax, to which the rule of *strictissimi juris* applies. It is unquestioned that the power to levy the tax complained of in this case was expressly given by statute and had been exercised for many years. The real question, at last, is whether the former law has been repealed by implication by the segregation act, for it certainly has not been repealed thereby in express terms. Repeals by implication are not favored. As is said in Cooley on Taxation, page 502: "But there is always a presumption more or less strong, according to circumstances, that a statute is not intended to repeal a prior statute on the same subject, unless it does so in express terms. * * * In the case of grants of power to tax—or indeed for other purposes—to municipal bodies, the presumption that it was not intended to modify or repeal them by subsequent general legislation is so strong as to be almost conclusive. It is not usual to modify or take away special powers by general laws; and if it is intended to do so in any particular case,

it is reasonable to suppose the legislature would do so in unequivocal language." To the same effect see *Tresnon* v. *Board of Supervisors, supra.*

It remains to consider the further very earnest and very admirably presented contention of counsel for the defendant in error, that if the construction of the segregation act which we have adopted is correct, then the act itself is un-constitutional because it violates section 168 of the Virginia Constitution, which requires that all taxes "shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and col-lected under general laws." This contention is necessarily disposed of by the treatment which we have applied to the terms of sections 8 and 9 of schedule C. We hold that mer-chants' capital is not embraced in the classification of that schedule, but remains where it has practically always been, in a class to itself, subject to a license tax only by the State but liable to a local property tax; and that the propriety and legality of such a classification has been too long recognized in this State to admit of serious question, and is, moreover, now plainly authorized by section 169 of the Constitution.

There can be no question about the power to tax different classes of intangible property at different rates. A contrary holding would strike a fatal blow to the entire plan of taxa-tion as established by the General Assembly in 1915 (see section 9 of the tax bill); and would, furthermore, be con-trary to the settled law on the subject. Judson on Taxation, section 441; 37 Cyc. 746; *Bradley* v. *City of Richmond,* 110 Va. 521, 524, 66 S. E. 872, and cases cited.

Upon the cross-error assigned, we find no reason to inter-fere with the decision of the lower court as to the amount of capital upon which the assessment was made; but we are further of opinion that the relief sought by the defendant in error should have been denied in all respects, and this court will so order.

*Reversed.*