# Richmond

C. F. JOYNER, JR., COMMISSIONER, ETC. v. HOWARD G. MATTHEWS AND ANOTHER.

December 3, 1951.

Record No. 3823.

Present, All the Justices.

The opinion states the case.

*J. Lindsay Almond, Jr., Attorney General, D. Gardiner Tyler, Jr., Assistant Attorney General,* and *W. W. Beverley* and *Beverley H. Randolph, Jr., Special Assistants to the Attorney General,* for the appellants.

*S. W. Shelton* and *E. Neil Rogers,* for the appellees.

WHITTLE, J., delivered the opinion of the court.

Appellants, C. F. Joyner, Jr., Commissioner of Motor Vehicles, and J. Lindsay Almond, Jr., Attorney General, for the Commonwealth of Virginia, are appealing from a decree of the Circuit Court of the city of Richmond, entered on the 13th day of July, 1950. The suit involves a proceeding filed by appellees for declaratory judgment, wherein appellees, who are non-resident truck operators, sought to have their rights determined and protected under section 46-338.1 of the Code of Virginia, 1950, and to recover certain funds paid by them, under protest.

Appellees, Howard G. Matthews and Matthews Trucking Corporation, are residents of the State of New York, and operate trucks in interstate commerce. Their operations cover several states, including Virginia. The record does not show that either of them has been convicted of violating section 46-338.1 of the Virginia Code.

The record shows, however, that on eight occasions prior to the institution of these proceedings their agents, servants and employees were arrested in Virginia for operating trucks over the highways in violation of section 46-334 of the 1950 Code. These agents, servants and employees were tried and convicted of driving overloaded trucks owned or controlled by appellees. Appellees had knowledge, actual and constructive, of the weight laws, and with this knowledge they caused and permitted drivers of their trucks to operate them in violation of law.

At the time of the arrest and conviction of these drivers they were acting for and on behalf of appellees in the scope and course of their employment and appellees caused the violation of

the weight laws of this State upon which these convictions were predicated.

When appellees were notified of the convictions the penalties assessed under section 46-338.1 were paid by them. On two occasions the payments were made "under protest". On five occasions, while this suit was pending, drivers of appellees' trucks were arrested, convicted and fined for operating over-loaded trucks on the highways. In these five instances the penalties were assessed against appellees and paid into the trial court pursuant to an order of court to be held pending the outcome of this litigation.

The above facts are either proven or admitted by appellees. They take the position that as they have never been "convicted" of operating trucks weighted in excess of the statutory limits, they are not subject to the payment of any funds as required by section 46-338.1 nor can their operating rights be revoked for failure to pay such sums. To have their interpretation of the statute confirmed they filed a petition in equity for declaratory judgment.

To the petition appellants filed their verified answer admitting that appellees had never been "convicted" in Virginia. The answer charged, however, that appellees had caused trucks owned by them to be operated over the highways of this State in violation of her weight laws; that this was done with knowledge upon their part; that on eight occasions agents, servants and employees driving trucks owned or controlled by them were convicted of driving over-loaded vehicles on the highways; that on at least two occasions they paid the fines; that at the time the drivers of the trucks were apprehended they were acting as agents, servants and employees of appellees within the course and scope of their employment; and that appellees were responsible for the violations upon which the convictions of their agents were founded.

Appellants contend that, in view of the above, the petition for declaratory judgment brought on the equity side of the court should be dismissed for want of equity in the appellees.

The allegations contained in appellants' verified answer as to the responsibility of appellees for the violations were not denied by any responsive pleading in the cause.

Briefly, the contentions of the parties are as follows: Appellees contend (1) that neither of them has been "convicted"

and therefore section 46-338.1 is not applicable to them; (2) that, if applicable, the statute is unconstitutional in that it deprives them of their constitutional rights without due process of law.

Appellants contend (1) that section 46-338.1 is applicable; (2) that it is constitutional; (3) that appellees are estopped for want of equity to prosecute this equitable proceeding under the facts and circumstances of the case, and (4) that the court, under its discretionary powers, should have declined jurisdiction.

The trial court in its decree did not consider the constitutional question and made no reference to the equitable defenses interposed by appellants. The decree of the court held that section 46-338.1 was not applicable to appellees. Its decision was predicated upon this one point.

Code, section 46-338.1 reads as follows:

*"Further Penalties for Exceeding Maximum Load Limits.—* Upon final conviction of any person, firm or corporation for operating or causing to be operated over the highways of this State a motor vehicle or vehicles exceeding the maximum load limits as provided in this article, such person, firm or corporation shall, in addition to penalties provided for such convictions, pay or cause to be paid to the Division of Motor Vehicles for the benefit of the Literary Fund the sum of two dollars per hundred pounds or fraction thereof for each and every hundred pounds of weight in excess of the maximum weight provided in this article, such payment to be made without demand on the part of the Division within thirty days from the entry of the final conviction. Upon the failure of such person, firm or corporation to comply with the penalty provisions of this section as provided above, the Division and the Department of State Police may thereafter deny to the offending person, firm or corporation the right to operate a motor vehicle or vehicles upon the highways of this State until the penalty provisions herein have been fully complied with."

The record discloses that appellees were permitted to operate trucks over the highways of Virginia under a reciprocity agreement existing between Virginia and New York without obtaining Virginia license tags. This right to operate in Virginia was a privilege or license granted by Virginia under the reciprocity agreement and, as shown by the record, the privileges granted thereunder were subject to the conditions that those exercising

the privileges would conform to the laws of the state granting them. These privileges were extended appellees as residents of New York State, not to a hired servant whose residence is not disclosed.

That appellees flagrantly violated the Virginia law cannot be denied, and in fact it is admitted. In view of this, the equitable defenses interposed by appellants are appealing but as we see the case it is not necessary for us to pass upon these defenses.

■ Section 46-338.1 is a remedial statute and therefore it should be liberally construed so as to carry into effect the legislative will which prompted its passage. Several sections of the Code deal with the question of weight limitations. Section 46-334, Code of 1950, sets out the gross weight allowable to vehicles operating over the roads of Virginia. Section 46-335.1 provides that any violation of section 46-334 shall be punishable as provided in section 46-18. When these statutes are considered together they show a clear intent upon the part of the legislature to regulate, in the interest of public safety, the weight of vehicles operated over Virginia highways.

■ In the legitimate exercise of its police power the State can regulate the weight of commercial trucks operated over its highways. Commercial carriers may be regulated and treated as a special class for the purpose of regulatory legislation. *South Carolina State Highway Dept.* v. *Barnwell Bros.*, 303 U. S. 177, 58 S. Ct. 510, 82 L. ed. 734; *Continental Baking Co.* v. *Woodring*, 286 U. S. 352, 52 S. Ct. 595, 76 L. ed. 1155.

Mr. Justice Eggleston, speaking for this court, has laid down the following basic propositions:

"The right of a citizen to travel upon the public highways is a common right, but the exercise of that right may be regulated or controlled in the interest of public safety under the police power of the State. The operation of a motor vehicle on such highways is not a natural right. It is a conditional privilege, which may be suspended or revoked under the police power. The license or permit to so operate is not a contract or property right in a constitutional sense." *Prichard* v. *Battle*, 178 Va. 455, 17 S. E. (2d) 393.

"It is well settled that the police power of a State to regulate the use of motor vehicles on its highways extends to nonresidents as well as residents, and that it may prohibit the use of its highways by a foreign motor vehicle unless and until it

is licensed in accordance with its laws.'' *C. I. T. Corp.* v. *Crosby & Co.*, 175 Va. 16, 7 S. E. (2d) 107.

The apparent purpose of the Virginia legislature, in the exercise of its police power under the sections of the Code above cited, was to promote public safety in the first instance, and secondarily to protect the highways of this State from unreasonable wear and tear. *South Carolina State Highway Dept.* v. *Barnwell Bros., supra.*

Briefly, the procedure under these statutes is as follows: The driver of a vehicle who violates section 46-334 can be charged with a misdemeanor under section 46-335.1, and if convicted he is fined under section 46-18. This affects only the driver of the vehicle. It does not touch directly the owner of the truck unless it happens, which is rare, that the driver of the truck is also the owner. The non-resident trucking company is the real offender. The trucks are loaded under its direction and it is charged with knowledge when the trucks are overloaded. The owner, not the driver, profits by the violation—the greater the load the greater the profit.

The rate of $2 per hundred pounds or fraction thereof for every hundred pounds in excess of the maximum legal weight was fixed by the statute for the purpose of taking the profits out of overloading by imposing this cost upon the owner of the truck. The intent of the legislature was to reach the violation at its source and to require the party responsible to pay for it. It will be noted that the section does not provide for the collection of these charges, it simply provides that if the payments are not made the right to operate a motor vehicle over the Virginia highways may be revoked. So long as the violation is paid for at the rate fixed by section 46-338.1 he can continue to operate. These payments are not penal in a criminal sense and are not intended as additional punishment, they are regulatory and civil in their nature.

In dealing with the revocation of a driver's license Mr. Justice Eggleston said in *Prichard* v. *Battle, supra:* ''The revocation is no part of the punishment fixed by the jury or by the court wherein the offender is tried * * * nor is it, in our opinion, an added punishment for the offense committed. It is civil and not criminal in its nature.''

By the same reasoning the revocation of operating rights under section 46-338.1 for the non-payment of the sums required

by the section is civil in its nature, and the payments required by the section are not penal but represent regulatory legislation which is essentially civil, is remedial in scope and should be liberally construed. *Lovejoy* v. *Isbell,* 70 Conn. 557, 40 A. 531.

"Although a statute imposing a penalty will be so construed as not to include within its scope any act or person not plainly or fairly intended to be included, it will not be so construed as to defeat a plain and proper legislative intent. Moreover, if the statute relates to the public safety, it may be construed as remedial as well as penal. The proper course in construing such a law is to search out and follow the true intent of the legislature and to adopt that sense of the words used which will promote the legislative policy, being careful not to enlarge the statute by implication. * * *" 23 Am. Jur., Forfeitures and Penalties, § 37, page 632.

It is admitted that appellees have not been "convicted" of violating section 46-334, but as heretofore stated, it is clearly established that they, with knowledge of the Virginia weight laws, have been responsible for and have "caused" violations of this section. They engaged eight drivers who, while acting within the scope of their employment, were apprehended for operating overloaded trucks and fined pursuant to section 46-18. The owners were equally guilty with the drivers in "causing (the trucks) to be operated"; they were primarily responsible for and undoubtedly the procurers of the violations.

Section 46-338.1 is composed of two sentences. It will be noted that the latter sentence does not contain the word "convicted", it does not say "*convicted* person, firm or corporation", but reads "*offending* person, firm or corporation". (Italics supplied) Under its terms, if the penalty provisions are not complied with, "* * * the Division and the Department of State Police may thereafter deny to the *offending* (rather than *convicted*) person, firm or corporation the right to operate a motor vehicle or vehicles upon the highways of this State * * *". (Italics supplied)

Who is the "offending person, firm or corporation" contemplated by the statute in this instance? Is it the hired driver of the truck or the appellees? Appellees are the ones who deliberately overload the equipment or permit it to be overloaded in New York and, with actual knowledge of Virginia's weight laws, order their drivers to take the overloaded trucks into this

State. Clearly, appellees are "offending" persons within the meaning of the statute.

It would be futile to revoke the operating rights of a truck driver. The legislature did not expect a hired driver to pay the overload charges exacted under section 46-338.1.

The Commissioner of Motor Vehicles of this Commonwealth has followed this legislation from its inception. He realized the necessity for the legislation, and his department has placed a reasonable interpretation upon the statute in keeping with legislative intent.

In the case of *Richmond* v. *Drewry-Hughes Co.*, 122 Va. 178, 90 S. E. 635, 94 S. E. 989, we said:

"We think the foregoing conclusions necessarily flow from an independent view of the statutes germane to the inquiry; but, if it be conceded that the question is a doubtful one, then we should give due weight to the interpretation placed upon these statutes by that branch of the executive department of the State which is specially charged with the duty of construing and effectuating their provisions. It appears that the construction we have adopted is in accord with that which has been acted upon by the State Tax Board, composed of the Governor, the Auditor of Public Accounts, and the Chairman of the State Corporation Commission. * * * It is true that the rule of interpretation which permits the courts to look to the practical construction adopted by executive officers is usually applied to cases in which such construction has continued and been acquiesced in for a long period of time; but it is not to be confined to such cases. One reason for the rule is that the officers charged with the duty of carrying new laws into effect are presumed to have familiarized themselves with all the considerations pertinent to the meaning and purpose of the new law, and to have formed an independent, conscientious, and competent expert opinion thereon." (122 Va., at page 193)

See also, *Miller* v. *Commonwealth,* 180 Va. 36, 42, 21 S. E. (2d) 721, 723, and West's Virginia and West Virginia Digest, Statutes, § 219, and cases there cited.

For the reasons herein assigned the declaration of the trial court that section 46-338.1 is not applicable to appellees is reversed, and the funds in the sum of $2,194 on deposit in said court are ordered to be paid to the Commissioner of Motor Vehicles to be disposed of by him as the law directs.

*Reversed.*