# Richmond

## A. M. Prichard, Jr. v. M. S. Battle, Director of the Division of Motor Vehicles of the Commonwealth of Virginia.

November 24, 1941.

Record No. 2483.

Present, All the Justices.

The opinion states the case.

*Joseph I. Nachman,* for the petitioner.

*Edwin H. Gibson, Assistant Attorney-General,* for the respondent.

EGGLESTON, J., delivered the opinion of the court.

This is a petition for mandamus filed by A. M. Prichard, Jr., against M. S. Battle, Director of the Division of Motor Vehicles of the Commonwealth of Virginia, to compel the latter to surrender to the petitioner a certain bond and the attached collateral deposited with the director as a condition to the renewal of the petitioner's license to operate a motor vehicle upon the highways of this State.

The petitioner alleges that on February 27, 1939, he was convicted by the civil and police justice for the city of Charlottesville on a charge of leaving the scene of an accident in which an automobile driven by him was involved (Michie's Code of 1936, § 2154(104); Acts 1932, ch. 342, p. 648, as amended by Acts 1938, ch. 302, p.

435) ; that as a result of this conviction his license to operate a motor vehicle upon the highways of this State was suspended for the period of one year by the Division of Motor Vehicles under the provisions of section 17 of the Virginia 'Operators' and 'Chauffeurs' License Act (Michie's Code of 1936, § 2154(186) ; Acts 1932, ch. 385, p. 781, as amended by Acts 1934, ch. 389, p. 822; Acts 1936, ch. 22, p. 37; Acts 1938, ch. 188, p. 304) ; that in order to secure the reissuance of his license he was required, on September 2, 1940, to file with the Director of the Division of Motor Vehicles a bond in the penal sum of $11,000, conditioned according to law, and to deposit therewith certain collateral as evidence of his ability to respond in damages which might thereafter be . adjudged against him on account of accidents resulting from his ownership or operation of a motor vehicle; that on February 26, 1941, there was granted to him by the Governor of the Commonwealth of Virginia a full and complete pardon for the offense of which he had been convicted, ''thereby removing all disability suffered by the petitioner as a result of said conviction;'' and that although as a result of the pardon the petitioner was entitled to have restored to him the bond and collateral which he had deposited with the director, the latter had failed and refused to return them to him and was withholding them without authority of law.

The prayer of the petition is that this court direct the issuance of a writ of mandamus requiring the director to return and deliver to the petitioner the bond and the collateral therewith deposited.

The contention of the petitioner is that section 17 of the Virginia 'Operators' and Chauffeurs' License Act, *supra,* makes it mandatory that the Division of Motor Vehicles ''forthwith revoke'' the license to drive an automobile ''upon receiving a record of the conviction of such person'' of certain specified offenses, including that of leaving the scene of an accident in which his car is involved; that such revocation is a part of the penalty or punishment inflicted upon the offender within

the meaning of section 73 of the Constitution of Virginia and section 2569 of the Code (as amended by Acts 1928, ch. 415, p. 1080; Acts 1930, ch. 391, p. 828), which empower the governor to "remit fines and penalties;" and that the effect of the pardon granted to petitioner is to restore to him the right to operate an automobile upon the highways of the State free of the conditions which were imposed upon him by the division when his license was renewed. Accordingly, he says, the Director of the Division of Motor Vehicles should be required to return to him the bond and the collateral.

The director has filed a demurrer to the petition which challenges its sufficiency in law. His contention is that the revocation of the license and the requirement of the deposit of the bond and collateral as a condition to the reissuance of the license, are not a part of the penalty or punishment inflicted on the petitioner for his breach of the law, but are measures flowing from the police power of the State designed to protect other users of the State highways. Hence, he argues, the pardon granted to the petitioner did not have the effect of restoring his license to drive a motor vehicle free of the conditions which were imposed upon him by the division pursuant to the statute.

In our opinion the position of the director is well taken.

The argument of the petitioner overlooks the nature and purpose of the issuance and revocation of licenses to drive motor vehicles.

In *Commonwealth* v. *Ellett,* 174 Va. 403, 414, 4 S. E. (2d) 762, 767, we said:

"The right of a citizen to travel upon the public highways is a common right, but the exercise of that right may be regulated or controlled in the interest of public safety under the police power of the State. The operation of a motor vehicle on such highways is not a natural right. It is a conditional privilege, which may be suspended or revoked under the police power. The

license or permit to so operate is not a contract or property right in a constitutional sense.''

See also, *Law* v. *Commonwealth,* 171 Va. 449, 454, 199 S. E. 516, 519.

Such a privilege is granted to those who are qualified and is withheld from those who are not. As we said in *Hannabass* v. *Ryan,* 164 Va. 519, 524, 180 S. E. 416, 417:

''The enactment of the Virginia Operators' and Chauffeurs' License Act by the Legislature was designed under the police power of the State to protect the use of the highways from those who are not qualified to operate motor vehicles, to exercise some measure of control over such operators and generally to regulate, standardize and make uniform, so far as practicable, the granting or withholding of this privilege in furtherance of the safety of the users of the highways of the State.''

The provisions for both the issuance and the revocation of licenses are a part of this purpose. The fact that the revocation of a license is made mandatory as the result of a conviction of certain specified offenses under section 17 of the act (Michie's Code of 1936, § 2154)(186) ) does not, of course, alter its purpose. The Legislature, in its wisdom, has simply provided that one who has been convicted of these offenses is no longer deemed fit to operate motor vehicles on the State highways unless and until the other users of the highways are protected against him, that is, until the offender establishes ''his ability to respond in damages which may thereafter be adjudged against him on account of accidents resulting from his ownership or operation of a motor vehicle.''

Certainly there is nothing legally objectionable to putting drivers convicted of serious violations of the motor vehicle statutes in a class separate from those who have not been so convicted, and requiring of the former security or conditions not required of the latter

in order that they may be licensed to operate on State highways.

■ ■ The revocation is no part of the punishment fixed by the jury or by the court wherein the offender is tried. *Commonwealth* v. *Ellett, supra* (174 Va. 403, 411, 4 S. E. (2d) 762, 765). Nor is it, in our opinion, an added punishment for the offense committed. It is civil and not criminal in its nature. *Commonwealth* v. *Funk,* 323 Pa. 390, 186 A. 65, 69, 70; *Steele* v. *State Road Commission,* 116 W. Va. 227, 179 S. E. 810.

■ The question as to whether the revocation of a license because of an act for which the licensee has been convicted or because of the conviction itself is an added punishment has frequently been before the courts. The universal holding is that such a revocation is not an added punishment, but is a finding that by reason of the commission of the act or the conviction of the licensee, the latter is no longer a fit person to hold and enjoy the privilege which the State had theretofore granted to him under its police power. The authorities agree that the purpose of the revocation is to protect the public and not to punish the licensee.

In *Davis* v. *Commonwealth,* 75 Va. 944, 946, this court held that the revocation of a license to sell intoxicating liquors because of an offense for which the licensee had been convicted was not a punishment for the offense, but was simply the withdrawal of the privilege which the State had granted the licensee to carry on a legitimate business. See also, *Cherry* v. *Commonwealth,* 78 Va. 375.

In *Hawker* v. *People of State of New York,* 170 U. S. 189, 18 S. Ct. 573, 42 L. Ed. 1002, it was held that the denial or revocation of a license to practice medicine to one who had been convicted of a felony was not added punishment for the offense. See also, *Mandel* v. *Board of Regents of University of State of New York,* 250 N. Y. 173, 164 N. E. 895, 896.

In *State* v. *Harris,* 50 Minn. 128, 52 N. W. 387, 388, in holding that the revocation of a liquor license was not a punishment for the offense committed, the court said: "While the revocation by the court follows the conviction as a consequence of the violation of the ordinance, it has no more the purpose or effect of punishment than if the license were revoked by the mayor or city council, neither of whom would have the power to impose punishment for the offense. There is a plain distinction between such a withdrawal of a special privilege which has been abused, the termination of a mere license, and the penalty which the law imposes as a punishment for crime."

The courts have uniformly held that the purpose of a disbarment proceeding is not to punish the offending attorney but to protect the public and to remove from the rolls of the court one who has been proved to be unfit to exercise the privilege granted to him. *Norfolk & Portsmouth Bar Ass'n* v. *Drewry,* 161 Va. 833, 837, 172 S. E. 282, and authorities there cited; *People* v. *Culkin,* 248 N. Y. 465, 162 N. E. 487, 489, 60 A. L. R. 851 (opinion by Cardozo, J.).

The same reasoning applies to the revocation of a license to operate a motor vehicle. Its purpose is not to punish the offender but to remove from the highways an operator who is a potential danger to other users.

The precise question was recently before the highest court of Kentucky in *Commonwealth* v. *Harris,* 278 Ky. 218, 128 S. W. (2d) 579, in which it was held that suspension of the driving license of one convicted of operating an automobile while intoxicated is not a part of the penalty for such offense, nor added punishment, but is merely the forfeiture of a conditional temporary permit for the licensee's failure to observe the conditions under which the license was issued. See also, *People* v. *O'Rourke,* 124 Cal. App. 752, 13 P. (2d) 989, 992.

Having reached the conclusion that neither the revocation of the petitioner's license nor the conditions placed upon him by the statute in order that he

might obtain its reissuance, are penalties or a part of the punishment within the meaning of section 73 of the Constitution of Virginia and Code, § 2569, as amended, it follows that such revocation and conditions have not been affected by the pardon which has been granted to him.

Our conclusion is amply supported by authority.

In the leading case of *State* v. *Hazzard,* 139 Wash. 487, 247 P. 957, 47 A. L. R. 538, it was held that a pardon granted under a constitutional provision similar to ours to a physician who had been convicted of a felony, did not restore to the offender the right to practice medicine which had been forfeited because of the conviction. The court there pointed out that while the pardon had relieved the offender of further punishment, it had not done away with the fact of the conviction or the fact that the offender was not a person of proper character to practice the profession. It said (47 A. L. R., p. 542):

"There is a wide distinction between the right which one, whether felon or free, has to hold his own property against the world, and deny even the state the right to take it from him without compensation therefor, and that other right to practice a profession which demands peculiar qualifications in order to protect the public, and requires a license. * * * One qualified in all respects has a right to a license, but one unqualified has no right whatever."

The same result was reached in the more recent case of *Page* v. *Watson,* 140 Fla. 536, 192 So. 205, 126 A. L. R. 249. The court there held that while a pardon "restores one to the customary civil rights which ordinarily belong to a citizen of the State, which are generally conceded or recognized to be the right to hold office, to vote, to serve on a jury, to be a witness," it does not restore the extraordinary right to practice a profession which is a privilege granted under the police power of the State to one who is entitled to it.

Both of these cases criticize the broad language used in *Ex parte Garland,* 4 Wall. (71 U. S.) 333, 380, 18 L. Ed. 366, relied upon by the petitioner here, in which it was said that, "when the pardon is full, it releases the punishment and blots out of existence the guilt, so that in the eye of the law the offender is as innocent as if he had never committed the offence." See also, an article by Professor Williston in 28 Harvard Law Review, 647, entitled, "Does a Pardon Blot Out Guilt?"

In *Ex parte Stephenson,* 237 Ala. 488, 187 So. 461, it was held that a full pardon granted to an attorney who had been convicted of a felony did not restore to him the right to practice law.

In *Baldi* v. *Gilchrist,* 204 App. Div. 425, 198 N. Y. S. 493, it was held that an application for a license to operate a taxicab might be denied on the ground that the applicant had been convicted of a felony and was morally unfit, although he had been fully pardoned.

And so in the case before us, while the pardon granted the petitioner relieves him from the punishment or penalty which the State might have exacted of him for the offense, it does not wipe out the fact of his conviction or the fact that by reason of the act committed he is put in a class of persons regarded by the State as unfit to drive automobiles on the highways without making additional provision for the safety of others. If one who leaves the scene of an accident in which his car is involved becomes by reason of such an act unfit to exercise the privilege of driving an automobile on the highways, he is not rendered fit simply because the State's Executive has relieved him of the burden of paying a fine or serving a sentence in prison for the act done.

It is true that in *Edwards* v. *Commonwealth,* 78 Va. 39, 44, 49 Am. Rep. 377, this court, following the broad language used in *Ex parte Garland, supra,* said that by a pardon the offender "was not only relieved of the punishment annexed to the offence for which he had been convicted, but of all *penalties and consequences,* except

political disabilities, growing out of his conviction and sentence.'' (Italics supplied.) But this language must be read in the light of the context and the question before the court for decision. The very next sentence is, ''One of those *consequences* was the liability to which it subjected him to receive the *additional punishment* prescribed by the statute, in case he should be afterwards sentenced to the penitentiary in this State.'' (Italics supplied.) The question there involved was whether one convicted of a felony and pardoned could upon his subsequent conviction of a felony, be given additional punishment provided under the statute for a second offense. It was held that the pardon relieved him of the consequence of such additional punishment. That and no more was necessary to the decision of the case.

The case before us, as we have seen, involves no question of additional punishment.

For the reasons stated the mandamus is denied.

*Mandamus denied.*