COURT OF APPEALS OF VIRGINIA

Present:  Chief Judge Moon, Judges Baker, Benton, Coleman, Elder,
          Bray, Fitzpatrick, Annunziata and Overton
Argued at Richmond, Virginia


DAVID TENCH, S/K/A
 DAVID M. TENCH

v.   Record No. 0773-95-2                    OPINION BY
                                     CHIEF JUDGE NORMAN K. MOON
COMMONWEALTH OF VIRGINIA                  OCTOBER 24, 1995


             FROM THE CIRCUIT COURT OF HENRICO COUNTY
                     James E. Kulp, Judge

          Ronald E. Smith (Theresa Rhinehart; Thomas E.
          Gallahue; Gregory Beckwith; Matthew S. McConnell;
          Lawrence, Smith & Hudgins; Law Offices of Theresa
          Rhinehart & Associates; Law Offices of Lawrence E.
          Gallahue; Phillips, Beckwith & Hall; Herge,
          Sparks & Christopher, on brief), for appellant.

          H. Elizabeth Shaffer, Assistant Attorney General,
          (James S. Gilmore, III, Attorney General, on
          brief), for appellee.

          Amicus Curiae:  Cullen D. Seltzer for appellant.

          Amici Curiae:  Honorable Thomas W. Moss, Jr.;
          Honorable James F. Almand; Honorable Edward M.
          Holland; Honorable C. Richard Cranwell; Honorable
          Thomas K. Norment, Jr.; Honorable Joseph V.
          Gartlan, Jr.; Virginia Association of
          Commonwealth's Attorneys; Virginia Sheriffs
          Association (H. Lane Kneedler; Roger C. Wiley;
          Hazel & Thomas; Hefty & Wiley, on brief), for
          appellee.


     David M. Tench appeals his conviction for driving while

intoxicated in violation of Code § 18.2-266.  Tench claims that

because his driver's license had been suspended pursuant to Code

§ 46.2-391.2 prior to his conviction and punishment for driving

while intoxicated, he was twice placed in jeopardy for the same

offense in violation of the United States Constitution.  We

disagree, and affirm his conviction.

On January 13, 1995, Tench was arrested for driving while intoxicated. He submitted to a breath test, with a result of .12% grams of alcohol per 210 liters of breath. A magistrate issued a warrant for a violation of Code § 18.2-266. After issuance of the warrant, Tench's license was automatically suspended for seven days pursuant to Code § 46.2-391.2. Tench did not appeal that suspension, and his license was returned to him after the seven-day period had expired. Tench was then convicted in Henrico General District Court of driving while intoxicated, and on appeal to Henrico Circuit Court was convicted after a bench trial. He was sentenced to serve ninety days in jail, all of which was suspended for three years, and was ordered to pay a fine of $150. The circuit court rejected his double jeopardy claim.

Code § 46.2-391.2, which became effective on January 1, 1995, requires automatic suspension of the driver's license of any person arrested for driving while intoxicated if the driver fails a breath test administered pursuant to Code § 18.2-268.2, and the automatic suspension of the driver's license of any person who refuses to take a breath test as required by Code § 18.2-268.3. Under Code § 46.2-391.2, when the driver either fails the breath test or refuses to take it, he or she is taken before a magistrate and a warrant is issued for the driver's arrest. Upon issuance of the warrant, the magistrate automatically suspends the accused's driving privilege pursuant

to Code § 46.2-391.2.  The accused may appeal the suspension to the general district court, which must hear the appeal on the expedited docket for appeals of orders relating to bail.  The only ground for the general district court to revoke the suspension is a showing by the accused that the officer did not have probable cause for the arrest or that the magistrate did not have probable cause to issue the warrant.  If the accused is acquitted of the charge under Code §§ 18.2-266 or 18.2-268.3, the suspension is automatically rescinded.  See Code § 46.2-391.4.  Otherwise, the general district court automatically returns the license to the accused at the end of the seven-day period.

The double jeopardy clause provides three separate protections: protection against a second prosecution for the same offense after acquittal, a second prosecution for the same offense after conviction, and multiple punishments for the same offense.  Brown v. Ohio, 432 U.S. 161, 165 (1977).  Tench asserts that the proceeding that revoked his license for seven days was a punishment for the charged offense of driving while intoxicated, and to thereafter subject him to criminal penalties for driving while intoxicated violates the protection against multiple punishments for the same offense.

In this case, the double jeopardy claim arises not from two successive criminal prosecutions, but from a civil license suspension followed by a criminal prosecution.  Such a procedure constitutes double jeopardy only if the license suspension constitutes punishment, and if the license suspension and the

criminal sanctions occurred in separate proceedings.  Department of Revenue of Montana v. Kurth Ranch, 114 S. Ct. 1937, 1945 (1994); United States v. Halper, 490 U.S. 435, 446 (1989).[1] Because we hold that the license suspension does not constitute punishment, we do not reach the issue of whether the suspension and the criminal penalties were imposed in separate proceedings.

In United States v. Halper, the Supreme Court for the first time considered "whether and under what circumstances a civil penalty may constitute punishment for purposes of the Double Jeopardy Clause."  Id. at 446.  In deciding this question, the labels "civil" and "criminal" are not controlling; instead, the court must evaluate the goals the sanctions are designed to serve.  Id. at 447.  The Halper Court held that "under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution."  Id. at 448-49.

The Supreme Court in Halper recognized that a civil sanction may be "so divorced from any remedial goal that it constitutes `punishment'" for double jeopardy purposes.  Id. at 443.

---

[1]  To violate the double jeopardy clause, the punishments must be for the same offense.  Department of Revenue of Montana v. Kurth Ranch, 114 S. Ct. at 1941.  This issue is determined under the standards set forth in Blockburger v. United States, 284 U.S. 299 (1932).  For purposes of this appeal, we will assume that the license suspension and the subsequent criminal penalty were for the same offense.

However, that is not the case for the seven day license suspension under Code § 46.2-391.2. The Supreme Court of Virginia has recognized that the purpose of revoking a driver's license is "not to punish the offender but to remove from the highways an operator who is a potential danger to other users." Prichard v. Battle, 178 Va. 455, 463, 17 S.E.2d 393, 396 (1941).[2] See also Commonwealth v. Ellett, 174 Va. 403, 414, 4 S.E.2d 762, 767 (1939) ("The operation of a motor vehicle . . . is a conditional privilege, which may be suspended or revoked under the police power. . . . [It] is not a contract or property right in a constitutional sense."). The General Assembly's consideration of a procedure for automatic license suspension was motivated by its desire to reduce "alcohol-related crashes, fatalities, and injuries." See S. J. Res. 172, 1989 Va. Acts.[3] Enactment of this procedure was no empty exercise, as states that have enacted such laws have experienced a reduction in alcohol-related crashes and fatalities. Id. We hold that automatic

[2]  The Virginia Supreme Court has also held that revocation of other licenses, such as the license to practice law, is remedial rather than punitive. See, e.g., Norfolk & Portsmouth Bar Association v. Drewry, 161 Va. 833, 837, 172 S.E. 282, 284 (1934). The United States Supreme Court has stated that one sanction "which is characteristically free of the punitive criminal element is revocation of a privilege voluntarily granted," such as disbarment and the revocation of various licenses. Helvering v. Mitchell, 303 U.S. 391, 399 (1938).

[3]  In arguing that Code § 46.2-391.2 has a punitive purpose, Tench relies on several statements by interested parties that were submitted to the Department of Motor Vehicles during consideration of the administrative suspension procedure. Such statements carry little if any weight in our analysis of the purpose of Code § 46.2-391.2.

license suspension under Code § 46.2-391.2 is a remedial sanction because its purpose is to protect the public from intoxicated drivers and to reduce alcohol-related accidents.  Therefore, the sanction of license suspension does not constitute punishment for purposes of double jeopardy.[4]

Every state supreme court that has addressed the issue, and most intermediate appellate courts, have held that administrative license revocation does not constitute punishment for double jeopardy purposes.  The Vermont Supreme Court in State v. Strong, 605 A.2d 510 (Vt. 1982), stated that a "'bright line' has developed [on this issue] because the nonpunitive purpose of the license suspension is so clear and compelling."  Id. at 514.  We concur in that point of view.

---

[4]  The defendant contends that Code § 46.2-391.2 is not remedial because license suspension does not bear a rational relationship to compensating the government for a loss.  This argument is derived from Halper, where the trial court had imposed a substantial monetary penalty for a series of fraudulent Medicare claims.  The Halper Court established "a rule for the rare case . . . where a fixed-penalty provision subjects a prolific but small-gauge offender to a sanction overwhelmingly disproportionate to the damages he has caused."  490 U.S. at 449.  If that sanction "bears no rational relation to the goal of compensating the Government for its loss", i.e., the Government's actual damages and expenses, it would constitute punishment for double jeopardy purposes.  Id.

This is not the "rare case" described in Halper.  The sanction here is not monetary and is not designed to compensate the Government for out-of-pocket losses.  See Small v. Commonwealth, 12 Va. App. 314, 398 S.E.2d 98 (1991).  Its remedial purpose is not to compensate, but to protect the public from intoxicated drivers and the accidents they cause.  Moreover, even if Halper establishes a "rational relation" test for all civil sanctions, license suspension does not constitute punishment, because it bears a rational relationship to its remedial goals.

- 6 -

Tench contends that under Halper and subsequent Supreme Court cases, a civil sanction that is not "solely remedial" constitutes punishment for double jeopardy purposes. This argument is misconceived. Under Halper, a civil sanction constitutes punishment if it is "only . . . a deterrent or retribution." Halper, 490 U.S. at 449 (emphasis added). While Halper contains discussion of a standard closer to that proposed by Tench, that standard is not part of the Court's holding.

In arguing that Code § 46.2-391.2 must have a solely remedial purpose in order to avoid double jeopardy problems, Tench relies on Austin v. United States, 113 S. Ct. 2801 (1993), and United States v. $405,089.23 U.S. Currency, 33 F.3d 1210 (9th Cir. 1994), modified, 56 F.3d 41 (1995). In Austin, the Supreme Court held that the Eighth Amendment's excessive fines clause applies to in rem forfeiture proceedings. The Supreme Court concluded that property forfeitures have historically been regarded as punitive, even though they may also serve a remedial purpose. Austin, 113 S. Ct. at 2811-12. Although the Court in Austin used some of the expansive language in Halper to assist in its analysis, Austin is not a double jeopardy case and does not purport to modify Halper. Therefore, Austin does not control the decision in this case.[5]

---

[5] Tench relies on United States v. $405,089.23 U.S. Currency. In that case, which involved civil forfeiture of property belonging to convicted drug dealers, the Ninth Circuit ruled that Austin and Halper establish a "solely" remedial test for determining whether a civil sanction constitutes punishment for purposes of double jeopardy. This ruling, in our opinion, is neither correct nor binding, and we decline to follow it.

Indeed, in Department of Revenue of Montana v. Kurth Ranch, a case decided after Austin, the U.S. Supreme Court restated the narrow holding in Halper, and also stated that the obvious deterrent purpose of the penalty at issue in Kurth Ranch did not "automatically" mark it as punishment.  114 S. Ct. at 1945-46. Other courts considering the goals of administrative license suspensions have recognized that although there is an element of deterrence in any summary suspension procedure, that fact does not render the suspension punitive so long as its primary purpose is remedial.  See, e.g., State v. Zerkel, 1995 WL 444826, *12-13 (Alaska Ct. App. 1995); State v. Strong, 605 A.2d at 513. Moreover, the fact that the offender perceives the suspension as punitive is irrelevant, because for the offender "even remedial sanctions carry the sting of punishment."  Halper, 490 U.S. at 447 n.7.  Therefore, even if automatic license suspension serves in part to deter intoxicated drivers, this does not render it punitive for purposes of double jeopardy.

In summary, the automatic suspension of Tench's operator's license had a remedial purpose and thus did not constitute punishment under the standard established in Halper and reaffirmed in Kurth Ranch.  Because that proceeding did not impose punishment within the meaning of the double jeopardy clause, Tench was not twice placed in jeopardy in violation of the United States Constitution when prosecuted for driving while intoxicated.  Therefore, we affirm Tench's conviction for driving while intoxicated.

<u>Affirmed.</u>

Benton, J., dissenting.



David Tench was punished for driving under the influence of intoxicants when his driver's license was suspended following his arrest. Tench was later convicted and additionally punished for driving under the influence of intoxicants. Because the prosecution for driving under the influence followed the license suspension and resulted in additional punishment for the same offense, I would hold that it violated the Double Jeopardy Clause.[6]

The Double Jeopardy Clause "protects against multiple punishments for the same offense." North Carolina v. Pearce, 395 U.S. 711, 717 (1969). Discussing the characteristics of punishment, the Supreme Court ruled as follows:

> It is commonly understood that civil proceedings may advance punitive as well as

---

[6] Because the majority does not address the issue whether the license suspension and the punishment for driving under the influence were imposed in separate proceedings, I will not discuss in detail this aspect of the case. The principle is well established that the protection against multiple punishments applies when such punishments are imposed in separate proceedings. Missouri v. Hunter, 459 U.S. 359 (1983).

I would hold that the license suspension proceeding is separate from the criminal proceeding for driving under the influence. The suspension proceeding before the magistrate is clearly a judicial proceeding. The automatic license suspension is imposed and the sanction is completed before the trial of the driving under the influence offense. The license suspension sanction is imposed irrespective of the defendant's actual guilt of the criminal offense. Finally, the license suspension proceeding, as the majority correctly concludes, is a civil proceeding.

remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.

These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. Furthermore, "[r]etribution and deterrence are not legitimate nonpunitive governmental objectives." From these premises, it follows that a civil sanction that cannot fairly be said <u>solely</u> to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.

<u>United States v. Halper</u>, 490 U.S. 435, 447-48 (1989)(emphasis added)(citations omitted). In order for a sanction to escape the classification of punishment, it must be solely remedial. <u>Austin v. United States</u>, ___ U.S. ___, ___, 113 S. Ct. 2801, 2806 (1993).

In <u>Austin</u>, the Supreme Court explicitly confirmed its ruling in <u>Halper</u> that a civil sanction that "'can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term.'" <u>Austin</u>, ___

- 11 -

U.S. at ___, 113 S. Ct. at 2806 (quoting Halper, 490 U.S. at 448). I agree with the majority's conclusion that Austin was not a double jeopardy case. However, the Supreme Court's analysis in Austin is significant because the Court applied the Halper definition of punishment. The majority opinion's characterization of Austin as "us[ing] some of the expansive language in Halper to assist in its analysis" misses the significance of the Supreme Court's rationale. On the one hand, the Court in Austin merely confirmed the Halper definition of punishment, a definition the majority declines to follow in this case; on the other hand, the Court in Austin used the definition of punishment in its analysis and, thus, added substance to the definition.

The issue before the Supreme Court in Austin was whether the Eighth Amendment Excessive Fines Clause applied to forfeitures. As the United States Court of Appeals for the Ninth Circuit aptly noted, "in determining whether the Excessive Fines Clause applied, the [Supreme] Court found it necessary to determine . . . whether the forfeiture statutes at issue constituted 'punishment.'" United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1219 (9th Cir. 1994). The language in Austin regarding "punishment" is essential to the Court's holding; it is neither dicta nor inconsequential. Both the United States Courts of Appeals for the Ninth and Tenth Circuits have ruled that, in Austin, the United States Supreme Court "emphasiz[ed] again that a sanction which is designed even in part to deter or punish will

– 12 –

constitute punishment, regardless of whether it also has a remedial purpose." $405,089.23 U.S. Currency, 33 F.3d at 1219. See also United States v. Hudson, 14 F.3d 536, 540 (10th Cir. 1994).

In the recent case of Department of Revenue v. Kurth Ranch, ___ U.S. ___, 114 S. Ct. 1937 (1994), the Supreme Court again used the Halper definition of punishment. The majority of this Court diminishes the significance of Austin when it concludes that Kurth Ranch "restated the narrow holding in Halper." The distinction the majority opinion makes between a "narrow" application of Halper in Kurth Ranch and an "expansive" application of Halper in Austin is one the Supreme Court itself has not made. By stating the following question, the Supreme Court in Kurth Ranch essentially applied the same analysis as in Halper: "Here, we ask only whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause." 114 S. Ct. at 1945. The Court found punitive characteristics and ruled the tax unconstitutional as applied. In Kurth Ranch, the Court recognized that a tax statute was not subject to the same type of corrective remedy as was appropriate in Halper, where "the District Court read the $2,000-per-count statutory penalty as discretionary and, approximating the amount required to make the Government whole, imposed the full sanction for only 8 of the 65 counts." Halper, 490 U.S. at 439.[7] The tax

_____

[7] The holding in Halper must be read within the context of the statute at issue and the remedy that the trial judge employed. After Halper was convicted of the criminal offense, the government

assessment statute at issue in <u>Kurth Ranch</u> was based on a formula that was not subject to the same approximation remedy.  ___ U.S. at ___, 114 S. Ct. at 1948.  Thus, the Court found the tax to be punishment and unconstitutional as applied to the Kurths.  <u>Id.</u>

These cases inexorably lead to the conclusion that whether Tench was twice punished for the same offense depends upon whether the license suspension is solely remedial or has deterrent or retribution characteristics.  The statute that authorized the license suspension provides in relevant part as

sought damages under the civil act that stated:

> that a person in violation is "liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action."  Having violated the Act 65 separate times, Halper thus appeared to be subject to a statutory penalty of more than $130,000.

490 U.S. at 438 (citation and footnote omitted).  The trial judge ruled that the civil act exacted a sanction that was both remedial and punitive and "ruled that imposition of the full amount would violate the Double Jeopardy Clause by punishing Halper a second time for the same conduct."  <u>Id.</u> at 439.  To avoid an unconstitutional application of the statute, the trial judge "limit[ed] the Government's recovery to double damages of $1,170 and the costs of the civil action."  <u>Id.</u> at 440.  The Supreme Court's holding "that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution," <u>id.</u> at 448-49, validated the trial judge's ruling that the civil sanction was in part punishment and that to the extent it was punishment, the punishment portion was unlawful.  The Supreme Court remanded the case to allow the government "an opportunity to present . . . an accounting of its actual costs . . . , to seek an adjustment of the [trial judge's] approximation, and to recover its demonstrated costs."  490 U.S. at 452.

follows:

> A. If a breath test is taken pursuant to § 18.2-268.2 or any similar ordinance of any county, city or town and the results show a blood alcohol content of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath, or the person refuses to submit to the breath test in violation of § 18.2-268.3 or any similar local ordinance, and upon issuance of a warrant by the magistrate for a violation of § 18.2-266 or § 18.2-268.3, or any similar local ordinance, the person's license shall be suspended immediately for seven days.

Code § 46.2-391.2. We need not address whether the statute provides a civil or criminal sanction because as Halper teaches, "a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment." 490 U.S. at 448.

As a general principle, "revocation of a privilege traditionally granted" is a characteristic of a remedial sanction. Helvering v. Mitchell, 303 U.S. 391, 399 (1938). However, this Court in Hoye v. Commonwealth, 12 Va. App. 587, 589, 405 S.E.2d 628, 629 (1991), recognized that the loss of a privilege to drive is a forfeiture. See also Nelson v. Lamb, 195 Va. 1043, 1052, 81 S.E.2d 762, 767 (1954); Prichard v. Battle, 178 Va. 455, 463, 17 S.E.2d 393, 396 (1941). "[B]ecause of 'the historical understanding of forfeiture as punishment,' there is a strong presumption that any forfeiture statute does not serve solely a remedial purpose." $405,089.23 U.S. Currency, 33 F.3d at 1221.

In Austin, the Supreme Court analyzed the history of

forfeitures, see ___ U.S. at ___, 113 S. Ct. at 2806-10, and "conclude[d] . . . that forfeiture[s] generally . . . have been understood, at least in part, as punishment."  Id. at ___, 113 S. Ct. at 2810.

> Austin . . . makes clear that at least three principles are relevant to determining whether a forfeiture constitutes "punishment."  First, because of "the historical understanding of forfeiture as punishment," there is a strong presumption that any forfeiture statute does not serve solely a remedial purpose.  Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty conduct.  Finally, where [the legislature] has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law.

$405,089.23 U.S. Currency, 33 F.3d at 1221 (citation omitted).

Citing the legislative intent to reduce "alcohol-related crashes, fatalities, and injuries," the majority finds that the license suspension is a remedial sanction "because its purpose is to protect the public from intoxicated drivers and to reduce alcohol-related accidents."  Even though the legislature may have intended a remedial purpose, the license suspension statute contains significant punitive aspects that do not support a remedial purpose.  The summary suspension scheme embodied in Code § 46.2-391.2 automatically returns the license to the arrested driver after seven days without requiring any further proceeding or findings.  Such a suspension proceeding serves to punish for

- 16 -

the charged criminal act.  In part, its purpose obviously is deterrence and retribution.  "[T]he very existence of the summary sanction of the statute serves as a deterrent."  Mackey v. Montrym, 443 U.S. 1, 18 (1979).

Clearly, as the majority correctly observes, the legislature intended to deter drunk driving by imposing a swift punishment of suspension for violation of the statutory proscription.  Indeed, deterrence and punishment have long been considered the purposes of license suspension for drunk driving.  The Supreme Court of Virginia has stated that "[i]t is not necessary to do violence to logic or reasoning in arriving at the conclusion that the purpose of the statute is not only to punish drunken drivers but to prevent such drivers from using the highways to the hazard of other citizens."  Commonwealth v. Ellett, 174 Va. 403, 415, 4 S.E.2d 762, 767 (1939).

The license suspension is imposed immediately after the accused is arrested and charged criminally for driving under the influence.  The revocation is tied directly to the determination of probable cause that the offense has been committed.

Furthermore, the license suspension under Code § 46.2-391.2 is directly connected to the guilt of the accused.  Indeed, the statute states that

> a subsequent dismissal or acquittal of all
> the charges under §§ 18.2-266 and 18.2-268.3
> or any similar local ordinances, for the same
> offense for which a person's driver's license
> or privilege to operate a motor vehicle was
> suspended under § 46.2-391.2 shall result in
> the immediate rescission of the suspension.

- 17 -

Code § 46.2-391.4. Thus, the statute plainly exempts persons who drink alcohol and drive but who are not criminally culpable. Clearly, the suspension is to deter violation of the law and punish criminal conduct.

In Code § 46.2-391.2, the legislature has tied forfeiture of the driver's license directly to commission of the driving offense. Not only does the forfeiture of the privilege to drive hinge upon the commission of an offense, but as the Supreme Court noted in Kurth Ranch, the forfeiture is characteristic of punishment because "it also is exacted only after [the driver] has been arrested for the precise conduct that gives rise to the . . . [forfeiture] in the first place." ___ U.S. at ___, 114 S. Ct. at 1947. Persons who have been arrested constitute the entire class of persons subject to the forfeiture. Moreover, if the person is found not to have violated the drunk driving statute, the license is automatically and immediately returned.

In large measure, the decision in Prichard v. Battle, 178 Va. 455, 17 S.E.2d 393 (1941), invoked the distinction between civil and criminal matters. The Court determined that the revocation of a license by the Division of Motor Vehicles in an administrative proceeding because of a motor vehicle offense for which the licensee was convicted was not punishment. Id. at 462, 17 S.E.2d at 395. For purposes of double jeopardy analysis the Halper Court has clearly held that such a distinction is no longer dispositive. "[C]ivil proceedings may advance punitive as well as remedial goals." Halper, 490 U.S. at 447. Thus, the

Supreme Court held "that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated." Id. at 447 n.7.

In Ellett, "the sole question . . . [presented was] whether the revocation of the [driver's] permit is, under the statute, a part of the punishment for the crime charged." 174 Va. at 407, 4 S.E.2d at 764. The statute at issue in Ellett provided that "'[t]he judgment of conviction, ***, shall of itself operate to deprive the person convicted of the right to drive, ***.'" Id. at 411, 4 S.E.2d at 765. The Court noted the "distinction between the punishment provided by statute to be fixed by a court or jury upon conviction of a specified offense, and the legal consequences affecting the rights and privileges of the offender after his conviction." Id. at 415, 4 S.E.2d at 767. However, the Court did not hold that the loss of a license was not punishment; rather it stated that "[i]t is not necessary to do violence to logic or reasoning in arriving at the conclusion that the purpose of the statute is not only to punish drunken drivers, but to prevent such drivers from using the highways to the hazard of other citizens." Id. (emphasis added).

I would hold that although the license suspension statute has remedial characteristics, it also has a punitive aspect that "constitutes 'punishment' for the purpose of double jeopardy analysis." Halper, 490 U.S. at 443. To cure the double jeopardy

- 19 -

obstacle, <u>Halper</u> ordered the reduction of the civil fine, the second punishment, so that it had only a remedial purpose. <u>Halper</u>, 490 U.S. at 449-50. This case presents a different problem. The criminal prosecution followed the license suspension. The purely punitive part of the license suspension cannot now be separated from the remedial aspects. Because the license suspension constitutes punishment, the second punishment for driving under the influence violates double jeopardy.

This analysis does not extend the United States Supreme Court's holdings. Regardless of the civil or criminal label, an individual may not in separate proceedings be punished twice for the same offense. If two punishments do occur, the challenged punishment must be analyzed under <u>Halper</u> to determine if the remedial and punitive aspects may be severed. If the two purposes are intertwined, the second punishment must be struck down. As the Supreme Court stated when it discussed the Double Jeopardy Clause's proscription against multiple punishments, "[t]his constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state." <u>Id.</u> at 447.

Because I "cannot conclude that [the statutory] forfeiture . . . serves <u>solely</u> a remedial purpose," <u>Austin</u>, ___ U.S. at ___, 113 S. Ct. at 2812 (emphasis added), I would hold that Tench was twice punished for the same offense and I would reverse the conviction.

- 20 -