BENTON, Judge,
dissenting.
David Tench was punished for driving under the influence of intoxicants when his driver’s license was suspended following his arrest. Tench was later convicted and additionally punished for driving under the influence of intoxicants. Because the prosecution for driving under the influence followed the license suspension and resulted in additional punishment for the same offense, I would hold that it violated the Double Jeopardy Clause.[6]
The Double Jeopardy Clause “protects against multiple punishments for the same offense.” North Carolina v. Pearce, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). Discussing the characteristics of punishment, the Supreme Court ruled as follows:
*209 It is commonly understood that civil proceedings may advance punitive as well as remedial goals, and, conversely, that both punitive and remedial goals may be served by criminal penalties. The notion of punishment, as we commonly understand it, cuts across the division between the civil and the criminal law, and for the purposes of assessing whether a given sanction constitutes multiple punishment barred by the Double Jeopardy Clause, we must follow the notion where it leads. To that end, the determination whether a given civil sanction constitutes punishment in the relevant sense requires a particularized assessment of the penalty imposed and the purposes that the penalty may fairly be said to serve. Simply put, a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.
These goals are familiar. We have recognized in other contexts that punishment serves the twin aims of retribution and deterrence. Furthermore, “[r]etribution and deterrence are not legitimate nonpunitive governmental objectives.” From these premises, it follows that a civil sanction that cannot fairly be said solely to serve a remedial purpose, but rather can only be explained as also serving either retributive or deterrent purposes, is punishment, as we have come to understand the term.
United States v. Halper, 490 U.S. 435, 447-48, 109 S.Ct. 1892, 1901-02, 104 L.Ed.2d 487 (1989)(emphasis added) (citations omitted). In order for a sanction to escape the classification of punishment, it must be solely remedial. Austin v. United States, — U.S.-,-, 113 S.Ct. 2801, 2806, 125 L.Ed.2d 488 (1993).
In Austin, the Supreme Court explicitly confirmed its ruling in Halper that a civil sanction that “ ‘can only be explained as also serving either retributive or deterrent purposes, is punishment as we have come to understand the term.’ ” Austin, — U.S. at-, 113 S.Ct. at 2806 (quoting Halper, 490 U.S. at 448, 109 S.Ct. at 1902). I agree with the majority’s conclusion that Austin was not a double jeopardy case. How *210 ever, the Supreme Court’s analysis in Austin is significant because the Court applied the Halper definition of punishment. The majority opinion’s characterization of Austin as “us[ing] some of the expansive language in Halper to assist in its analysis” misses the significance of the Supreme Court’s rationale. On the one hand, the Court in Austin merely confirmed the Halper definition of punishment, a definition the majority declines to follow in this case; on the other hand, the Court in Austin used the definition of punishment in its analysis and, thus, added substance to the definition.
The issue before the Supreme Court in Austin was whether the Eighth Amendment Excessive Fines Clause applied to forfeitures. As the United States Court of Appeals for the Ninth Circuit aptly noted, “in determining whether the Excessive Fines Clause applied, the [Supreme] Court found it necessary to determine ... whether the forfeiture statutes at issue constituted ‘punishment.’ ” United States v. $405,089.23 U.S. Currency, 33 F.3d 1210, 1219 (9th Cir.1994). The language in Austin regarding “punishment” is essential to the Court’s holding; it is neither dicta nor inconsequential. Both the United States Courts of Appeals for the Ninth and Tenth Circuits have ruled that, in Austin, the United States Supreme Court “emphasiz[ed] again that a sanction which is designed even in part to deter or punish will constitute punishment, regardless of whether it also has a remedial purpose.” $105,089.23 U.S. Currency, 33 F.3d at 1219. See also United States v. Hudson, 14 F.3d 536, 540 (10th Cir.1994).
In the recent case of Department of Revenue v. Kurth Ranch, — U.S.-, 114 S.Ct. 1937, 128 L.Ed.2d 767 (1994), the Supreme Court again used the Halper definition of punishment. The majority of this Court diminishes the significance of Austin when it concludes that Kurth Ranch “restated the narrow holding in Halper.” The distinction the majority opinion makes between a “narrow” application of Halper in Kurth Ranch and an “expansive” application of Halper in Austin is one the Supreme Court itself has not made. By stating the following question, the Supreme Court in Kurth *211 Ranch essentially applied the same analysis as in Halper: “Here, we ask only whether the tax has punitive characteristics that subject it to the constraints of the Double Jeopardy Clause.” — U.S. at -, 114 S.Ct. at 1945. The Court found punitive characteristics and ruled the tax unconstitutional as applied. In Kurth Ranch, the Court recognized that a tax statute was not subject to the same type of corrective remedy as was appropriate in Halper, where “the District Court read the $2,000-per-count statutory penalty as discretionary and, approximating the amount required to make the Government whole, imposed the full sanction for only 8 of the 65 counts.” Halper, 490 U.S. at 489, 109 S.Ct. at 1897.[7] The tax assessment statute at issue in Kurth Ranch was based on a formula that was not subject to the same approximation *212 remedy. — U.S. at-, 114 S.Ct. at 1948. Thus, the Court found the tax to be punishment and unconstitutional as applied to the Kurths. Id.
These cases inexorably lead to the conclusion that whether Tench was twice punished for the same offense depends upon whether the license suspension is solely remedial or has deterrent or retribution characteristics. The statute that authorized the license suspension provides in relevant part as follows:
A. If a breath test is taken pursuant to § 18.2-268.2 or any similar ordinance of any county, city or town and the results show a blood alcohol content of 0.08 percent or more by weight by volume or 0.08 grams or more per 210 liters of breath, or the person refuses to submit to the breath test in violation of § 18.2-268.3 or any similar local ordinance, and upon issuance of a warrant by the magistrate for a violation of § 18.2-266 or § 18.2-268.3, or any similar local ordinance, the person’s license shall be suspended immediately for seven days.
Code § 46.2-391.2. We need not address whether the statute provides a civil or criminal sanction because as Halper teaches, “a civil as well as a criminal sanction constitutes punishment when the sanction as applied in the individual case serves the goals of punishment.” 490 U.S. at 448, 109 S.Ct. at 1901-02.
As a general principle, “revocation of a privilege traditionally granted” is a characteristic of a remedial sanction. Helvering v. Mitchell, 303 U.S. 391, 399, 58 S.Ct. 630, 633, 82 L.Ed. 917 (1938). However, this Court in Hoye v. Commonwealth, 12 Va.App. 587, 589, 405 S.E.2d 628, 629 (1991), recognized that the loss of a privilege to drive is a forfeiture. See also Nelson v. Lamb, 195 Va. 1043, 1052, 81 S.E.2d 762, 767 (1954); Prichard v. Battle, 178 Va. 455, 463, 17 S.E.2d 393, 396 (1941). “[Bjecause of ‘the historical understanding of forfeiture as punishment,’ there is a strong presumption that any forfeiture statute does not serve solely a remedial purpose.” $J±05,089.23 U.S. Currency, 33 F.3d at 1221.
*213 In Austin, the Supreme Court analyzed the history of forfeitures, see — U.S. at---, 113 S.Ct. at 2806-10, and “conclude[d] ... that forfeiture[s] generally ... have been understood, at least in part, as punishment.” Id. at-, 113 S.Ct. at 2810.
Austin ... makes clear that at least three principles are relevant to determining whether a forfeiture constitutes “punishment.” First, because of “the historical understanding of forfeiture as punishment,” there is a strong presumption that any forfeiture statute does not serve solely a remedial purpose. Second, where such a statute focuses on the culpability of the property owner by exempting innocent owners or lienholders, it is likely that the enactment serves at least in part to deter and punish guilty conduct. Finally, where [the legislature] has tied forfeiture directly to the commission of specified offenses, it is reasonable to presume that the forfeiture is at least partially intended as an additional deterrent to or punishment for those violations of law.
$405,089.23 U.S. Currency, 33 F.3d at 1221 (citation omitted).
Citing the legislative intent to reduce “alcohol-related crashes, fatalities, and injuries,” the majority finds that the license suspension is a remedial sanction “because its purpose is to protect the public from intoxicated drivers and to reduce alcohol-related accidents.” Even though the legislature may have intended a remedial purpose, the license suspension statute contains significant punitive aspects that do not support a remedial purpose. The summary suspension scheme embodied in Code § 46.2-391.2 automatically returns the license to the arrested driver after seven days without requiring any further proceeding or findings. Such a suspension proceeding serves to punish for the charged criminal act. In part, its purpose obviously is deterrence and retribution. “[T]he very existence of the summary sanction of the statute serves as a deterrent.” Mackey v. Montrym, 443 U.S. 1, 18, 99 S.Ct. 2612, 2621, 61 L.Ed.2d 321 (1979).
*214 Clearly, as the majority correctly observes, the legislature intended to deter drunk driving by imposing a swift punishment of suspension for violation of the statutory proscription. Indeed, deterrence and punishment have long been considered the purposes of license suspension for drunk driving. The Supreme Court of Virginia has stated that “[i]t is not necessary to do violence to logic or reasoning in arriving at the conclusion that the purpose of the statute is not only to punish drunken drivers but to prevent such drivers from using the highways to the hazard of other citizens.” Commonwealth v. Ellett, 174 Va. 403, 415, 4 S.E.2d 762, 767 (1939).
The license suspension is imposed immediately after the accused is arrested and charged criminally for driving under the influence. The revocation is tied directly to the determination of probable cause that the offense has been committed.
Furthermore, the license suspension under Code § 46.2-391.2 is directly connected to the guilt of the accused. Indeed, the statute states that
a subsequent dismissal or acquittal of all the charges under §§ 18.2-266 and 18.2-268.3 or any similar local ordinances, for the same offense for which a person’s driver’s license or privilege to operate a motor vehicle was suspended under § 46.2-391.2 shall result in the immediate rescission of the suspension.
Code § 46.2-391.4. Thus, the statute plainly exempts persons who drink alcohol and drive but who are not criminally culpable. Clearly, the suspension is to deter violation of the law and punish criminal conduct.
In Code § 46.2-391.2, the legislature has tied forfeiture of the driver’s license directly to commission of the driving offense. Not only does the forfeiture of the privilege to drive hinge upon the commission of an offense, but as the Supreme Court noted in Kurth Ranch, the forfeiture is characteristic of punishment because “it also is exacted only after [the driver] has been arrested for the precise conduct that gives rise to the ... [forfeiture] in the first place.” — U.S. at-, 114 S.Ct. at 1947. Persons who have been arrested constitute the entire *215 class of persons subject to the forfeiture. Moreover, if the person is found not to have violated the drunk driving statute, the license is automatically and immediately returned.
In large measure, the decision in Prichard v. Battle, 178 Va. 455,17 S.E.2d 393 (1941), invoked the distinction between civil and criminal matters. The Court determined that the revocation of a license by the Division of Motor Vehicles in an administrative proceeding because of a motor vehicle offense for which the licensee was convicted was not punishment. Id. at 462, 17 S.E.2d at 395. For purposes of double jeopardy analysis, the Halper Court has clearly held that such a distinction is no longer dispositive. “[C]ivil proceedings may advance punitive as well as remedial goals.” Halper, 490 U.S. at 447,109 S.Ct. at 1901. Thus, the Supreme Court held “that in determining whether a particular civil sanction constitutes criminal punishment, it is the purposes actually served by the sanction in question, not the underlying nature of the proceeding giving rise to the sanction, that must be evaluated.” Id. at 447 n. 7,109 S.Ct. at 1901 n. 7.
In Ellett, “the sole question ... [presented was] whether the revocation of the [driver’s] permit is, under the statute, a part of the punishment for the crime charged.” 174 Va. at 407, 4 S.E.2d at 764. The statute at issue in Ellett provided that “ ‘[t]he judgment of conviction, * * *, shall of itself operate to deprive the person convicted of the right to drive, * * *.’ ” Id. at 411, 4 S.E.2d at 765. The Court noted the “distinction between the punishment provided by statute to be fixed by a court or jury upon conviction of a specified offense, and the legal consequences affecting the rights and privileges of the offender after his conviction.” Id. at 415, 4 S.E.2d at 767. However, the Court did not hold that the loss of a license was not punishment; rather it stated that “[i]t is not necessary to do violence to logic or reasoning in arriving at the conclusion that the purpose of the statute is not only to punish drunken drivers, but to prevent such drivers from using the highways to the hazard of other citizens.” Id. (emphasis added).
*216 I would hold that although the license suspension statute has remedial characteristics, it also has a punitive aspect that “constitutes ‘punishment’ for the purpose of double jeopardy analysis.” Halper, 490 U.S. at 443,109 S.Ct. at 1899. To cure the double jeopardy obstacle, Halper ordered the reduction of the civil fine, the second punishment, so that it had only a remedial purpose. Halper, 490 U.S. at 449-50, 109 S.Ct. at 1902-03. This case presents a different problem. The criminal prosecution followed the license suspension. The purely punitive part of the license suspension cannot now be separated from the remedial aspects. Because the license suspension constitutes punishment, the second punishment for driving under the influence violates double jeopardy.
This analysis does not extend the United States Supreme Court’s holdings. Regardless of the civil or criminal label, an individual may not in separate proceedings be punished twice for the same offense. If two punishments do occur, the challenged punishment must be analyzed under Halper to determine if the remedial and punitive aspects may be severed. If the two purposes are intertwined, the second punishment must be struck down. As the Supreme Court stated when it discussed the Double Jeopardy Clause’s proscription against multiple punishments, “[t]his constitutional protection is intrinsically personal. Its violation can be identified only by assessing the character of the actual sanctions imposed on the individual by the machinery of the state.” Id. at 447,109 S.Ct. at 1901.
Because I “cannot conclude that [the statutory] forfeiture ... serves solely a remedial purpose,” Austin, — U.S. at -, 113 S.Ct. at 2812 (emphasis added), I would hold that Tench was twice punished for the same offense and I would reverse the conviction.

. Because the majority does not address the issue whether the license suspension and the punishment for driving under the influence were imposed in separate proceedings, I will not discuss in detail this aspect of the case. The principle is well established that the protection against multiple punishments applies when such punishments are imposed in separate proceedings. Missouri v. Hunter, 459 U.S. 359, 103 S.Ct. 673, 74 L.Ed.2d 535 (1983).
I would hold that the license suspension proceeding is separate from the criminal proceeding for driving under the influence. The suspension proceeding before the magistrate is clearly a judicial proceeding. The automatic license suspension is imposed and the sanction is completed before the trial of the driving under the influence offense. The license suspension sanction is imposed irrespective of the defendant's actual guilt of the criminal offense. Finally, the license suspension proceeding, as the majority correctly concludes, is a civil proceeding.

. The holding in Halper must be read within the context of the statute at issue and the remedy that the trial judge employed. After Halper was convicted of the criminal offense, the government sought damages under the civil act that stated:
that a person in violation is "liable to the United States Government for a civil penalty of $2,000, an amount equal to 2 times the amount of damages the Government sustains because of the act of that person, and costs of the civil action.” Having violated the Act 65 separate times, Halper thus appeared to be subject to a statutory penalty of more than $130,000.
490 U.S. at 438, 109 S.Ct. at 1896 (citation and footnote omitted). The trial judge ruled that the civil act exacted a sanction that was both remedial and punitive and “ruled that imposition of the full amount would violate the Double Jeopardy Clause by punishing Halper a second time for the same conduct.” Id. at 439, 109 S.Ct. at 1897. To avoid an unconstitutional application of the statute, the trial judge "limit[edj the Government’s recovery to double damages of $1,170 and the costs of the civil action.” Id. at 440, 109 S.Ct. at 1897. The Supreme Court's holding “that under the Double Jeopardy Clause a defendant who already has been punished in a criminal prosecution may not be subjected to an additional civil sanction to the extent that the second sanction may not fairly be characterized as remedial, but only as a deterrent or retribution,” id. at 448-49, 109 S.Ct. at 1901-02, validated the trial judge’s ruling that the civil sanction was in part punishment and that to the extent it was punishment, the punishment portion was unlawful. The Supreme Court remanded the case to allow the government “an opportunity to present ... an accounting of its actual costs ..., to seek an adjustment of the [trial judge’s] approximation, and to recover its demonstrated costs.” 490 U.S. at 452, 109 S.Ct. at 1903-04.